IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  06-cv-01810-WYD


IN RE:
STEVE ANTHONY SANDOVAL and
ANN SHIELA KREMSKI-SANDOVAL,

      Debtors,

ALLEN-TRAUGOTT, INC.

      Plaintiff/ Appellant,

v.

STEVE ANTHONY SANDOVAL and
ANN SHIELA KREMSKI-SANDOVAL,

      Defendants/ Appellees.

---

## ORDER

---

I.    <u>INTRODUCTION</u>

THIS MATTER comes before the Court on the appeal by Plaintiff/Appellant

Allen-Traugott, Inc. ("AT") from three orders issued by the Bankruptcy Court made in

Adversary Proceeding number 03-30777-SBB.  This appeal arises from the following

set of dispositions: (1) the Bankruptcy Court's order granting the Debtor's motion to

convert the Chapter 7 proceeding to a Chapter 13 proceeding under 11 U.S.C. § 109(e)

[docket #129 and 130]; (2) the Bankruptcy Court's order denying AT's motion for

reconsideration [docket #138]; and (3) the Bankruptcy Court's order denying

Plaintiff/Appellant AT's creditor's claims [docket #231].  AT argues that the Bankruptcy Court erred in all three orders.

Specifically, AT first argues that the Bankruptcy Court erred as a matter of law and fact in refusing to apply Colo. Rev. Stat. § 38-22-127 to hold the Debtors to a duty to account, other fiduciary duties which the statute requires, and treble damages and attorney's fees.  Second, AT argues that the Bankruptcy Court erred as a matter of law and fact in holding that the Debtors were eligible to be Chapter 13 Debtors under 11 U.S.C. § 109(e).  Third, AT argues that the Bankruptcy Court erred as a matter of law and fact in failing to consider the substance of AT's Section 109(e) motion for reconsideration.  Fourth, AT argues that the Bankruptcy Court erred on due process grounds in: (1) denying a motion for partial continuance at the claims hearing so that A-T's accounting expert could be present to testify; (2) cutting short the time for a claims hearing so that admission and discussion of hundreds of accounting documents would not be feasible; and (3) disregarding A-T's presentation of expert testimony and reports.  Finally, AT argues that the Bankruptcy Court erred in its findings of fact on issues regarding roles and relations between the parties, the existence of oral agreements or a consensus on parts of agreements, and proof of damages.

II.   BACKGROUND

The following facts are relevant to this appeal of the Bankruptcy Court's orders. Prior to the bankruptcy filing, the Plaintiff/Appellant and Defendant/Appellees were engaged in litigation before the Eagle County District Court in a case styled: *Allen-Traugott, Inc. v. Sandoval, et al.*, No. 00-CV-502.  The underlying state court action

arose out of a construction dispute between AT and Mr. Sandoval and Ms. Kremski-Sandoval. Specifically, AT alleged, *inter alia*, that through entities known as Buildworks LLC and Buildworks II, Inc., Sandoval and Kremski-Sandoval received funds as contractors on multiple construction projects from January 1998 to January 1999, for which they had a duty to account as statutory trustees and were individually liable as fiduciaries under Colo. Rev. Stat. § 38-22-127. A jury trial was set to commence in the underlying state court action on October 20, 2007. However, on October 17, 2003, Sandoval and Kremski-Sandoval filed for relief under Chapter 7 of the Bankruptcy Code.

After the filing of the bankruptcy case, AT filed a proof of claim against Sandoval and Kremski-Sandoval, which asserted a claim in an amount exceeding $700,000. AT also filed an adversary proceeding against Sandoval and Kremski-Sandoval, seeking a denial of their discharge pursuant to subsections of 11 U.S.C. § 727(a), and exception of its claim from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). In December 2004, Sandoval and Kremski-Sandoval moved to convert their Chapter 7 case to a case under Chapter 13 pursuant to 11 U.S.C. § 706(a) ("Motion to Convert"). AT objected to the Motion to Convert, arguing that Sandoval and Kremski-Sandoval were not eligible for Chapter 13 relief under 11 U.S.C. § 109(e) because, based on AT's claim, the unsecured debts exceeded $290,525.

On January 6, 2005, Bankruptcy Judge Sidney Brooks held an evidentiary hearing on Sandoval and Kremski-Sandoval's ("Debtors") Motion to Convert at which the sole issue determined was the Debtors' eligibility for Chapter 13 relief.

Subsequently, in a telephonic hearing on January 12, 2005, Judge Brooks made oral findings of fact and conclusions of law.  Judge Brooks also issued a written order on January 12, 2005.  Judge Brooks held that the Debtors qualified to be debtors in a case under Chapter 13.  In response to the Bankruptcy Court's unfavorable ruling, AT filed a motion for reconsideration, which was denied by Judge Brooks on February 8, 2005.

On December 28, 2005, Judge Brooks held an evidentiary hearing on the Debtors' objection to AT's creditor's claims.  On August 11, 2006, Judge Brooks issued a written order sustaining Debtors' objection and disallowing AT's creditor's claims. [docket #231].  On September 12, 2006, Plaintiff/Appellant AT filed its Notice of Appeal from the Bankruptcy Court, which is now before me.

III.    ANALYSIS

A.    Standard of Review

On appeal, I may affirm, modify, or reverse the Bankruptcy Court's order, or remand with instructions for further proceedings.  *Kimco Leasing,Inc. v. Knee,* 144 B.R. 1001, 1005 (N.D.Ill. 1992).  I must review the findings of fact under a "clearly erroneous" standard.  *Id.*  A "finding of fact is clearly erroneous if it is without factual support in the record or if, after a review of all the evidence, we are left with the definite and firm conviction that a mistake has been made."  *In re Davidovich*, 901 F.2d 1533, 1536 (10th Cir. 1990).  I must review the Bankruptcy Court's conclusions of law, on the other hand, *de novo*.  *Id.*  "The burden of proof is on the party seeking to reverse a bankruptcy court's holding."  *In re Johnson*, 236 B.R. 510, 518 (D.C.Cir. 1999).  "That party must show that the court's holding was clearly erroneous as to its assessment of

the facts or erroneous in its interpretation of the law, and not simply that another

conclusion could have been reached." *Id.*  Further, "remedial statutes such as the

Bankruptcy Code are generally held to be liberally construed in favor of the debtor in

order to better facilitate that debtor's fresh start."  157 B.R. 268, 272 (Bankr. W.D.Va.

1993).

> B.    <u>Whether the Bankruptcy Court erred as a matter of law and fact in determining that Colo. Rev. Stat. § 38-22-127 did not apply to the case at hand.</u>

In its appeal, AT first argues that the Bankruptcy Court committed reversible

error by disregarding the basic principles set forth in Colo. Rev. Stat. § 38-22-127.  The

statute reads in pertinent part:

> All funds disbursed to any contractor or subcontractor under
> any building, construction, or remodeling contract or on any
> construction project shall be held in trust for the payment of
> the subcontractors, laborer or material suppliers, or laborers
> who have furnished laborers, materials, services or labor,
> who have a lien, or may have a lien, against the property, or
> who claim, or may claim, against a principal and surety
> under the provisions of this article and for which such
> disbursement was made.

Colo. Rev. Stat. § 38-22-127(1).  In its written order dated August 11, 2006, the

Bankruptcy Court held that this statute did not apply to the facts of this case.  Judge

Brooks based his determination on a 2005 decision from this Court, *Fowler & Peth, Inc.*

*v. Regan (In re Regan)*, 326 B.R. 175 (D. Colo. 2005).  In *Regan*, the district court

concluded that, unless it is demonstrated that subcontractors, laborer or material

suppliers, or laborers have actual or potential liens against the property, Colo. Rev.

Stat. § 38-22-127 does not apply.  *Id.* at 178.   After holding a two-day evidentiary

hearing, Judge Brooks found that AT did not demonstrate or even address whether any actual or potential liens existed against any of the subject properties.  Therefore, Judge Brooks concluded that "because Colo. Rev. Stat. § 38-22-127 does not apply here, neither does Colo. Rev. Stat. § 18-4-405, and treble damages do not flow therefrom."[1] (Order at 16; docket #231.)

        *In re Regan* was appealed to the Tenth Circuit Court of Appeals, and on February 27, 2007, the Tenth Circuit issued an opinion.  The Tenth Circuit reversed the district court after certifying the question of the interpretation of Colo. Rev. Stat. § 38-22-127 to the Colorado Supreme Court.  *In re Regan*, 477 F.3d 1209, 1212 (10th Cir. 2007).  The Colorado Supreme Court answered as follows: "the procedural requirements for perfecting a lien contained in sections 38-22-109 and 110 do not apply to claims against money held in trust under section 38-22-127."  *Id.* (internal quotations omitted).   In light of the fact that Judge Brooks based his decision in the instant matter on the district court's holding in *Regan*, I find that this matter must be remanded back to the Bankruptcy Court for proceedings consistent with the Tenth Circuit's reversal of *Regan.*  Additionally, since Judge Brooks' ruling with respect to the issue of a fiduciary duty was based on the *Regan* decision, this matter must also be remanded for proceedings consistent with the Tenth Circuit's reversal of *Regan*.

        C.      Whether the Bankruptcy Court's decision to convert this action to a
                Chapter 13 bankruptcy is a final order.

        As previously noted, the Bankruptcy Court held an evidentiary hearing on the

---

        [1]Judge Brooks also noted in his order that the *Regan* decision was on appeal with the Tenth Circuit Court of Appeals when he issued his decision.

Debtors' Motion to Convert.  Given size of the AT's alleged claim, the primary issue at

this hearing was whether the claim was "liquidated" within the meaning of § 109(e).

Judge Brooks concluded that AT's debt was not "liquidated" and, therefore, it could not

be included in the calculation of the Debtors' total unsecured debt for purposes of

§ 109(e).  By omitting AT's debt from the calculation of the Debtors' total unsecured

debt, Judge Brooks determined that the Debtors were eligible for Chapter 13 relief.

Accordingly, Judge Brooks entered an order granting the Debtors' Motion to Convert

("Conversion Order").  Following Judge Brooks' ruling, AT filed a Motion for

Reconsideration, which was denied in an Order dated February 8, 2005

("Reconsideration Order").  AT appeals these two rulings, arguing that Bankruptcy

Court erred in converting this case to a Chapter 13 bankruptcy.[2]

The Tenth Circuit has previously held that an order by the Bankruptcy Court

converting a case from a Chapter 7 bankruptcy to a Chapter 13 bankruptcy is not a

final order "until a Chapter 13 plan has been approved."  *In re Young*, 237 F.3d 1168,

1172-73 (10th Cir. 2001).  The *Young* Court makes this determination after discussing

the Tenth Circuit's "broad rule of finality in bankruptcy actions . . ."  *Id.* at 1172.  "To be

final and appealable, the district court's order must end the litigation and leave nothing

to be done except execute the judgment."  *Id.* (citing *In re Magic Circle Energy Corp*,

---

[2] On February 17, 2005, AT filed both a Notice of Appeal from the Conversion Order and the Reconsideration Order and a Motion for Leave to Appeal to the United Stated Bankruptcy Appellate Panel of the Tenth Circuit ("BAP").  On March 30, 2005, the BAP entered an order holding that the Conversion Order was not a final order, and therefore, denied AT's motion for leave to appeal.  (BAP Order dated March 30, 2005). AT appealed the BAP's decision to the Tenth Circuit Court of Appeals, and that appeal is presently pending.  (No. 05-1245; docket #173).

889 F.2d 950, 930 (10th Cir. 1989)).

The *Young* Court goes on to clarify the meaning of a final order.  Under *In re Cascade*, 956 F.2d 935, 939 (10th Cir. 1992), the Tenth Circuit "enunciated a more flexible test with different criteria of finality, namely: (1) the posture of an appellant's claim within a particular adversary proceeding or discrete unit, and (2) what further proceedings are envisioned by the district court's order." *Id.*  The *Young* Court, after applying the tests outlined in both *Magic Circle* and *Cascade*, found that "it is clear that an order under Chapter 13 is not final until a Chapter 13 plan has been approved." *Young*, 76 F.3d at 1172-73.  Otherwise, it would be impossible for creditors to determine in advance whether their interests truly had been affected." *Id.*  The *Young* Court further reasoned that "[t]he effect of the bankruptcy court's ruling in the Chapter 13 context only becomes clear after the bankruptcy court has approved a Chapter 13 plan providing for the allocation of disposable income over a fixed period of months." *Id.* at 1173.  Alternatively, "under Chapter 7, once the debtor's assets have been liquidated, it is virtually impossible to reassemble them, and therefore, an order converting to Chapter 7 is necessarily more final in nature than an order converting to Chapter 13." *Id.*

Turning to my analysis, after carefully reviewing the record before me including the transcripts, documents, oral and written rulings, and the parties' briefs, I find that the Bankruptcy Court's Conversion Order is not a final order, and is therefore, not appealable.  Applying the tests set forth in *Young*, I find that there is no information in the record to suggest that a Chapter 13 plan has been approved by the Bankruptcy

Court.  In fact, the last entry in the adversary action is a Notice of Transfer of Claim Other Than for Security (docket #268), filed September 22, 2007.[3]  Further, based upon my review of the hearing transcript, I find that the Bankruptcy Court did not intend for the Conversion Order to be a final order under the factors set forth in *Cascade.*  At the hearing held on January 12, 2005, Judge Brooks made the following statements in his oral ruling:

> The role of the court here in this case, under these circumstances, is to not necessarily have a complete, or a definitive, final and dispositive claims hearing.  That is for another date at another hearing.  The role of the Court, rather, is to survey the claims of creditors, take evidence on those claims submitted, as well as evidence on related issues, if any.

(Hr'g. Tr. at 16.)  Based on this portion of Judge Brooks' ruling, it is clear from his statements that he did not intend this order to be final.  From his comments, Judge Brooks intended on holding a future, definitive, final and dispositive claims hearing.

Interestingly, AT seems to concede in its Reply Brief that the Conversion Order may not be a final order.  In response to the Debtors' argument that the Conversion Order is not final, AT states that "[p]roperly speaking, if the Section 109(e) Order is not final and appealable at this time, the claims hearing should be vacated."  (AT's Reply Br. at 2.)  Additionally, while filing over 70 pages of briefing, AT fails to cite authority in support of its argument that the Conversion Order is a final order.  Thus, based on the record before me and the controlling Tenth Circuit law set forth above, the Conversion Order is not a final order, and therefore, not properly on appeal before the Court at this

---

[3]As of October 16, 2007.

time.[4]

     D.    <u>Whether the Bankruptcy Court violated AT's due process rights.</u>

AT also states that the Bankruptcy Court's "customized procedures" violated its due process rights. Specifically, AT first argues that the Bankruptcy Court erred in not granting a partial continuance of the claims hearing in order for its expert, Ms. Quandt, to testify in person. Second, AT argues that the Bankruptcy Court's decision to shorten the claims hearing from five days to two days was a due process violation. Finally, AT argues that the Bankruptcy Court erred in failing to consider all of AT's factual and documentary evidence.

This Court addressed the issue of what constitutes a due process violation in bankruptcy proceedings in *In re Stevinson*, 194 B.R. 509 (D.Colo. 1996). In the *Stevinson* case, Judge Kane found that pursuant to Fed. R. Evid. 611(a), a bankruptcy court may "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence." *Id.* at 511 (quoting *In re Adair*, 965 F.2d 777, 779 (9th Cir. 1992)). Judge Kane went on to say that

> [a]ll that is necessary for a trial procedure to satisfy due process is to provide the parties with fair notice and an opportunity to submit their evidence to an impartial arbiter. A trial is not a static ritual; it is a judicial examination in accord with established procedure of issues of law or fact

---

[4] In light of my ruling that the Conversion Order is not final, I will not address the appeal of the Bankruptcy Court's denial of AT's motion for reconsideration of the Conversion Order. AT's arguments concern issues of whether the Conversion Order was properly decided, thus, it is premature to address the appeal of the motion to reconsider the Conversion Order before the Conversion Order is deemed to be final and appealable.

> between parties by a court that has the authority to achieve
> a resulting decision capable of being enforced. . . .  The
> effective functioning of courts must, of necessity, be adapted
> to changing circumstances.  As an efficient means of
> managing ever increasing dockets, the bankruptcy court is
> well within the ambit of due process in requiring direct
> examination by declaration followed by the opportunity for
> cross-examination and redirect questioning.

*Id.* at 512.

With respect to its first argument, AT asserts that Judge Brooks should have granted its motion to continue the claims hearing, so that its expert, Ms. Quandt would be available to testify.  Ms. Quandt was not able to testify at the claims hearing because of the death of her mother.  Based on my review of the record and the case law, I am not persuaded by AT's argument.  The record before me shows that Ms. Quandt testified in person at the evidentiary hearing held in January of 2005.  Additionally, Judge Brooks heard AT's offer of proof with respect to Exhibit 1 (Ms. Quandt's Letter) and Exhibit 62 (Ms. Quandt's Affidavit).  Judge Brooks admitted Exhibits 1 and 62 and considered both in his ruling.  (Order at 8; docket #231.)  Judge Brooks also considered Ms. Quandt's live testimony from the January 2005 hearing in his ruling.  (Order at 9; docket #231.)  In his 26-page order, Judge Brooks thoroughly outlined the evidence he considered with respect to Ms. Quandt and made a detailed ruling as to his findings of fact and conclusions of law.  In the order, Judge Brooks addressed both Ms. Quandt's credibility and the credibility of the evidence Ms. Quandt presented though live testimony and written documents.  Therefore, I find that Judge Brooks gave AT sufficient opportunity to present evidence through its expert witness, Ms. Quandt.

With respect to AT's second argument that Judge Brooks erred in shortening the claims hearing from five days to two days, I find that it is well-within Judge Brooks' authority to make decisions designed to promote judicial efficiency.  *See In re Stevinson*, 194 B.R. at 509.  Therefore, I find that Judge Brooks' decisions to both deny AT's motion for a partial continuance and to shorten the length of the claims hearing were within his discretion and did not violate AT's due process rights.  Based on the record, AT had a full and fair process to litigate its claims before a neutral arbiter.  Through these decisions, Judge Brooks was simply exercising reasonable control over the mode and order of interrogating witnesses and presenting evidence.  Accordingly, I find that Judge Brooks neither erred when he denied AT's motion for a partial continuance so that Ms. Quandt could testify in person nor when he shortened the claims hearing from five days to two days.

With respect to AT's final argument that Judge Brooks did not properly consider all of AT's factual and documentary evidence, I reject this argument.  Based on the record before me, I find that Judge Brooks carefully and thoroughly weighed all of the evidence before him in making his rulings.  In his 26-page written order following the claims hearing, Judge Brooks outlined with specificity his findings of fact and conclusions of law.  Judge Brooks further detailed the process he used in forming his conclusions, including weighing the credibility of the both the testimony and the exhibits.  Judge Brooks examined the arguments of both parties along with the voluminous documents, and made sound and well-reasoned findings.  Moreover, AT fails to cite to any specific examples supported by controlling authority to bolster its

arguments.  Accordingly, I find that there is no evidence in the record of any error with respect to the proper consideration of AT's factual and documentary evidence.

IV.   <u>CONCLUSION</u>

Based on the foregoing, it is

ORDERED that Judge Brooks' rulings with respect to both the application of Colo. Rev. Stat. § 38-22-127 and the issue of fiduciary duty are **REMANDED** back to the Bankruptcy Court for proceedings consistent with the Tenth Circuit's reversal of *Regan.*  It is

FURTHER ORDERED that AT's appeal with respect to the Conversion Order is **DENIED.**  The Bankruptcy Court's Conversion Order is not a final order, and therefore, not properly on appeal before this Court.  It is

FURTHER ORDERED that AT's appeal with respect to due process violations is **DENIED.**  The Bankruptcy Court did not violate AT's due process rights.

Dated:  November 16, 2007

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge